UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-21381-UU

JANE DOE,

             Plaintiff,

v.

THE CITY OF MIAMI GARDENS and
JAVIER J. ROMAGUERA,

             Defendants.

_____/

## DEFENDANT JAVIER J. ROMAGUERA'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Javier J. Romaguera ("Sgt. Romaguera"), pursuant to Fed. R. Civ. P. 56 and
Local Rules 7.1 and 56, moves for partial summary judgment as to the Amended Complaint
[D.E. 24] ("Complaint") filed by Plaintiff Chantal Georges ("Plaintiff").

## OVERVIEW

Plaintiff alleges that on or about July 11, 2016, Sgt. Romaguera falsely imprisoned and
committed assault and battery on her. Specifically, she claims that Sgt. Romaguera gave her a
ride in his police car, after Plaintiff asked that Sgt. Romaguera provide her transportation
following a dispatch of Plaintiff's attempted suicide. She asserts that Sgt. Romaguera took her to
a hotel and sought to have sexual relations with her; she declined and Sgt. Romaguera left. She
remained in the hotel room for two nights, but Plaintiff admits she was free to leave. Based on

1

these allegations, Plaintiff asserts a § 1983 claim of Fourth Amendment violations (Count 1); state law assault and battery (Count 2); and state law false imprisonment (Count 4).[1]

Sgt. Romaguera seeks summary judgment on Counts 1 and 4, as well as on Plaintiff's present or future damages. As to Count 1, Sgt. Romaguera is entitled to qualified immunity and, alternatively, Plaintiff cannot prove a Fourth Amendment violation occurred, based on her allegations and the record, as a matter of law. As to Count 4 – state law false imprisonment – the undisputed record shows that Plaintiff was never detained against her will and, at all relevant times, had a reasonable means of escape, including unfettered access to the hotel room door. As to either present or future damages, Plaintiff admitted at deposition suffering no mental distress or other emotional injury because of this incident,[2] and any mental damages, namely, insomnia, have resolved. Accordingly, she has no present or future damages, as a matter of law.

## STATEMENT OF UNDISPUTED FACTS

1. Sgt. Romaguera and other MGPD officers responded to a 911 dispatch of a suspected suicide attempt following a report of a female running in the roadway in Miami Gardens, later determined to be Plaintiff. *See* MGPD Event Report No. 2016-193-294 (Exhibit "A" hereto).

2. MGPD officers, including Sgt. Romaguera, made contact with Plaintiff after speaking with Germaine Adderley, the individual who made the 911 call. Deposition of Officer Jimy Sanchez, dated January 16, 2019, 12:13-13:10. (Exhibit "B" hereto).

---

[1] The Court has dismissed with prejudice Count 3, a state law false imprisonment claim against the City of Miami Gardens and Sgt. Romaguera in his official capacity. D.E. 34, 35.

[2] Plaintiff's sworn Answers to Interrogatories, wholly inconsistent with this later deposition testimony, are the subject of a separate, concurrently filed motion for involuntary dismissal for discovery violations.

3.      Ms. Adderley operates a group home where Plaintiff was supposed to reside following her release from Jackson Behavioral Health. Exhibit B, 10:3-9; Exhibit A.

4.      Officer Seary located Plaintiff in the median at N.W. 17th Avenue and N.W. 183rd Street. Exhibit B, 14:10-14; Exhibit A.

5.      Sgt. Romaguera, Officer Sanchez, and Officer Junior Clervil (a Creole-speaking officer) subsequently arrived at the scene. Exhibit B, 14:16-15:4.

6.      Officer Sanchez, through the assistance of Officer Clervil's Creole translation, determined that Plaintiff did not meet Baker Act criteria. Exhibit B, 16:23-17:14; 20:15-21:12.

7.      The MGPD officers determined that Plaintiff should be given a courtesy ride, as she refused to go back to the group home.  Exhibit B, 22:18-23:16.

8.      Sgt. Romaguera provided the courtesy transport, as Plaintiff refused to go with any of the other officers at the scene. Exhibit B, 23:17-24:9.

9.      The CAD report reflects "Female does not meet Baker Act criteria. Female will be transported to Miramar by Sgt. Romaguera." Exhibit A, p. 1.

10.      It is common practice for victims or non-arrestees to be transported in a police vehicle. Deposition of Officer Joseph Schaefer, dated January 18, 2019, 58:6-24 (Exhibit "C" hereto).

11.      Plaintiff willingly entered Sgt. Romaguera's vehicle and admits to not being afraid. In fact, she states that she "felt safe with him because he's a police officer." Deposition of Plaintiff, dated November 30, 2018, 60:8-12 (Exhibit "D" hereto).

12.      Plaintiff testified that Sgt. Romaguera drove past her house and took her to a hotel. She says she did not have any conversations of significance with him during the transport. Exhibit D, 73:19-74:5; 75:9-17.

13.     Plaintiff admitted, under oath, during the MGPD Internal Affairs ("IA") Investigation that "she didn't feel like a prisoner, she was able to go out [of the hotel room] and come back and [Sgt. Romaguera] gave her up until Wednesday" to leave. Plaintiff's Internal Affairs Statement, dated July 25, 2016, 9:2-8 (Exhibit "E" hereto).

14.     She can be seen on hotel's surveillance video voluntarily walking with Sgt. Romaguera into the hotel, into the lobby, and into the hotel room. Video, 0:08-0:23 (conventionally filed as Exhibit "F"); Video, 0:00-0:26; (conventionally filed as Exhibit "G"); Video, 0:00-0:30 (conventionally filed as Exhibit "H")

15.     Sgt. Romaguera also gave Plaintiff a room key. Plaintiff's IA Statement, 6:9-11.

16.     In fact, Sgt. Romaguera is seen on the hotel's surveillance video instructing her how to use the hotel door key card and observes Sgt. Romaguera open the hotel room door with the card. Video, 0:00-0:43 (conventionally filed as Exhibit "I"); Exhibit H, 0:00-0:30.

17.     Plaintiff claims that once she and Sgt. Romaguera entered the hotel room, Sgt. Romaguera touched her breast and asked her to have sex with him. Exhibit D, 85:13-21; 86:1-3.

18.     She claims that she declined his advance, and Sgt. Romaguera left the hotel. Exhibit D, 85:13-21; 86:1-3.

19.     When MGPD officers found Plaintiff in the lobby on July 13, 2016, she stated that was seeing zombies. She was subsequently Baker Acted. MGPD Incident/Investigation Report No. 2016-012635 (Exhibit "J").

20.     Plaintiff alleges that her "actual damages are primarily comprised of emotional distress." Plaintiff identifies no additional categories of damages. Plaintiff's Initial Disclosures, dated June 7, 2018, at 4 (Exhibit "K").

21.     At deposition, however, Plaintiff denied any mental problems or mental issues. In fact, while she stated she initially had insomnia, she admits it has stopped and that she has never suffered from depression or anxiety since the July 2016 incident. Exhibit D, 50:14-18; 119:15-120:9.

22.     She also admits that has no fear of police because of this incident. Exhibit D, 119:25-120:5.

## STANDARD OF REVIEW

Summary judgment should be granted if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant bears the initial responsibility of asserting the basis for its motion. *See Id*.; *see also, Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir. 1990). The movant, however, may discharge its burden by merely "'showing' that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp*., 477 U.S. at 325. After the movant has carried its burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324. While the Court is to view the evidence produced and all factual inferences rising from it in a light most favorable to the nonmoving parties, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989) (emphasis added); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). If the nonmoving party's "response consists of nothing more than a repetition of [its]

conclusory allegations, the district court must enter summary judgment in the moving party's favor." *Barfield*, 883 F.2d at 934.

## ARGUMENT[3]

I.   **THE § 1983 CLAIM (COUNT 1) IS BARRED BY QUALIFIED IMMUNITY AND, ALTERNATIVELY, PLAINTIFF FAILS TO STATE A FOURTH AMENDMENT VIOLATION.**

   A.   *The Qualified Immunity Standard*

"Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Hope v. Pelzer*, 536 U.S. 730, 752 (2002) (internal quotation marks omitted). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation ... ." *Lee v. Ferraro*, 284 F.3d at 1194.

To be entitled to qualified immunity, the defendant public official must first show that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred. *Lee*, 284 F.3d at 1194. Once the defendant meets this burden, the burden shifts to plaintiff to establish both (1) that a constitutional right was violated and (2) that the constitutional right was clearly established at the time the official acted. *Id.*; *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008). Clearly established law "should not be defined at a 'high level of generality,'" but "must be 'particularized' to the facts of the case." *White v. Pauley*, 137 S. Ct. 548, 551, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 63 U.S. 731, 742 (2011)). If the plaintiff cannot establish either element, qualified immunity is appropriate. *See Pearson v. Callahan*, 555 U.S. 223, 226 (2009).

---

[3]   Citations to the Statement of Facts, *supra*, are cited herein as "Facts, ¶  ."

**B.  *Sgt. Romaguera Acted in the Course and Scope of His Discretionary Authority***

"To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Habert Int'l Inc. v. James*, 1567 F.3d 1271, 1282 (11th Cir. 1998). "In other words, '[w]e ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize.'" *Estate of Cummings v. Davenport*, 906 F.3d 932, 941 (11th Cir. 2018) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)). "In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017) (quoting *Holloman*, 370 F.3d at 1266). "[A] government official can prove he acted within the scope of his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (quoting *Barker v. Norman*, 651 F.2d 1107, 1121 (5th Cir. Unit A July 1981)).

In the instant case, it is irrefutable that Sgt. Romaguera was acting within the scope of his discretionary authority when he transported Plaintiff. *See Lee*, 284 F.3d at 1194. Sgt. Romaguera transported Plaintiff in his fully-marked police car in full uniform in furtherance of a job-related function, namely, providing a courtesy transport to a woman found near midnight walking in the median of a major road, refusing to return to her group home. Facts, ¶¶ 1-8. Transporting victims

or non-arrestees is something that MGPD Officers are permitted to do. Facts, ¶ 10. Accordingly, the burden is on Plaintiff to establish that qualified immunity is not appropriate. *See id.*; *Douglas Asphalt*, 541 F.3d at 1273.

### C.   *Plaintiff Has Not Alleged and Cannot Prove a Violation of a Constitutional Right.*

"In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 827 n.4 (11th Cir. 1997) (citing *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n. 7 (11th Cir. 1996)). The Supreme Court has reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauley*, *supra*. Rather, "the clearly established law must be 'particularized' to the facts of the case." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Thus, Plaintiff must point to a case from the U.S. Supreme Court, the Eleventh Circuit Court of Appeals, or the Florida Supreme Court "where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *See id.* at 552; *see also Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993). She simply cannot do so.

The Fourth Amendment prohibits unreasonable searches or seizures. U.S. CONST., amend. IV. A plain reading of Plaintiff's Complaint shows that she has not made (nor can she prove) allegations sufficient to rise to the level of a Fourth Amendment violation under § 1983. Plaintiff has made no allegation at all of an unlawful search. The only remaining question, then, is whether an unlawful seizure occurred — while none of Plaintiff's allegations raises a cognizable claim that Plaintiff was unlawfully seized.

A seizure occurs when a government official subjects a person to custodial arrest or "restrains [a person's] freedom to walk away" from the encounter. *Terry v. Ohio*, 392 U.S. 1, 12 (1968). An unlawful detention occurs when the plaintiff is (1) arrested without probable cause; (2) subject to an unreasonable search of one's home or dwelling; or (3) subjected to an unreasonable investigatory stop. Pattern Civ. Jury Instr. 11th Cir. 5.3 (2018). "Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest." *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996) (citing *Groman v. Township of Manalapan,* 47 F.3d 628, 636 (3d Cir. 1995)).

  1. <u>Plaintiff Was Not "Arrested" Or "Detained" For Purposes Of The Fourth Amendment.</u>

At no point in Plaintiff's Complaint does she allege that she was subjected to an unlawful arrest without probable cause (or arrested at all). Indeed, the undisputed evidence shows that Plaintiff was *never* arrested or unlawfully detained. Following the MGPD officers' investigation of a potential suicide, including Officer Sanchez's determination that she did not met Baker Act criteria, Plaintiff voluntarily entered Sgt. Romaguera's vehicle. Facts, ¶ 11. She admits not being afraid and, in fact, "felt safe with him because he's a police officer." Facts, ¶ 11. She did not have any conversations of significance with him during the transport. Facts, ¶ 12. When she arrived at the hotel, she entered willingly, showing no trepidation or hesitation. Facts, ¶ 14. She also admitted that she "didn't feel like a prisoner, [I] was able to go out [of the hotel room] and come back and [Sgt. Romaguera] gave [me] up until Wednesday" to leave. Facts, ¶ 13. She was, moreover, in possession of a room key, allowing her to freely re-enter the hotel room as she

pleased.[4] Facts, ¶ 15. Clearly, the undisputed evidence, even when viewed in the light most favorable to Plaintiff, shows that she was never unlawfully arrested or otherwise detained, pursuant to the Fourth Amendment. To the extent her § 1983 claim rests on a false arrest/ imprisonment claim, she has at no point alleged in the Complaint was Plaintiff under arrest or otherwise detained.

### 2.   The Alleged Groping is Not an Actionable Fourth Amendment "Seizure."

To the extent Plaintiff's claim of unreasonable seizure is based on a physical touching, "[t]he Fourth Amendment prohibits unreasonable *seizures* not unreasonable, unjustified, or outrageous conduct in general." *McCoy v. Harrison*, 341 F.3d 600, 606 (7th Cir. 2003) (emphasis in original) (finding plaintiff not "seized within the meaning of the Fourth Amendment" when government animal control agent hit plaintiff, dug his fingernails into her arm, then let her go). Plaintiff asserts only *one* instance of touching occurred: that Sgt. Romaguera tried to touch her breast. Facts, ¶ 17. "[Plaintiff] cannot sustain a claim based on 'the instant of the touching' alone." *Keyes v. Washington Cty.*, No. 3:15-CV-1987-AC, 2017 WL 3446256, at *4 (D. Or. Aug. 10, 2017), *reconsideration denied sub nom. Keyes v. Johnson*, No. 3:15-CV-01987-AC, 2017 WL 6328151 (D. Or. Dec. 11, 2017).

In *Keyes*, for example, the court found that the plaintiff, a criminal defendant performing community service as part of her sentence, had failed to state a Fourth Amendment violation against the defendant, a community service program monitor, who was in charge of supervising her during the community service. *Id.* at *3-4. The record established, for purposes of summary judgment, that the defendant groped the plaintiff's genital region with an "objective purpose of

---

[4]      At deposition, Plaintiff also contended baldly that Sgt. Romaguera somehow locked her ***into*** the hotel room, but she could not identify how that was even possible and, in any event, undermined that claim by acknowledging that she did not bother trying the inside door handle to see if the door would open, throughout the approximately 33 hours' stay in her room.

initiating unwanted sexual contact." *Id.* at *5. The court granted summary judgment for the defendant, concluding that the "unjustified physical attack by a government employee [] did not amount to a Fourth Amendment seizure." *Id.* at *5; *see also Bell v. King Cty.*,No. C07-1790-RSM, 2008 WL 4779736, at *2 (W.D. Wash. Oct. 31, 2008) (officer's slap on male arrestee's bottom while wearing women's clothing was a *de minimis* bodily intrusion which failed to state a § 1983 claim based on the Fourth Amendment).

Plaintiff's alleged "seizure" — namely, a single incident of touching her breast — does not approach the level of a true seizure for purposes of the Fourth Amendment, much like the facts in *Keyes* and *Bell*, *supra*. Plaintiff has not and cannot put forth evidence that Sgt. Romaguera violated any Fourth Amendment right sufficient to state a cognizable § 1983 claim, nor can she to overcome Sgt. Romaguera's qualified immunity.

## II.    SUMMARY JUDGMENT IS PROPER AS TO COUNT 4 BECAUSE PLAINTIFF HAD A REASONABLE MEANS OF ESCAPE.

The undisputed record shows that Plaintiff had and was aware of a reasonable means of escape from her alleged false imprisonment in the hotel. "A plaintiff in a false imprisonment action need not show that force was used in the detention or that he or she orally protested to demonstrate the detention was against his or her will . . . . However, a plaintiff alleging false arrest must show the restraint was unreasonable and unwarranted under the circumstances." *Spears v. Albertson's Inc.,* 848 So.2d 1176, 1178 (Fla. 1st DCA 2003). A plaintiff is not restrained when there is a reasonable means of escape, which is apparent or known to the person. *In re Standard Jury Instructions in Civil Cases,* § 407.4, 35 So.3d 666 (Fla. 2010).

Plaintiff has failed to show that Sgt. Romaguera used *any* restraint at *any* time during her alleged detention. Rather, the evidence shows that at all relevant times, she was either not

actually "imprisoned" and/or had a reasonable means of escape. First, she admits that she willingly got into his vehicle and at no point did she ask to exit the vehicle or otherwise protest entering the hotel. Facts, ¶¶ 11-14. She acknowledges that she was aware that she was invited to stay in the hotel through 11 a.m. on Wednesday, July 13th (and did so). Facts, ¶ 13. She also admits that she was able "to go out [of the hotel room] and come back and [Sgt. Romaguera] gave [me] up until Wednesday" to leave. Facts, ¶¶ 13. Thus, she has not shown any "unlawful restraint . . . against [her] will."  *re Standard Jury Instructions in Civil Cases,* § 407.4, 35 So.3d 666 (Fla. 2010); *See also* Section I.B.1, *supra*.

Second, she also admits having had a reasonable means of escape through the hotel door and, in fact, was able to go out and come back. Facts, ¶¶ 13-16. Any later attempt at contradicting this sworn testimony is not credible and should not be considered — namely, any claim that she did not know how to grasp, turn, and pull a door handle. The undisputed evidence shows that she saw Sgt. Romaguera use a hotel key to open the door from the outside and he showed her how to use the key. Facts, ¶¶ 15-16. In fact, she admitted having a hotel key during her stay, and admits that she was free to leave. Facts, ¶ 13. Reasonable means of escape were obviously apparent—namely, simply exiting the hotel room, and she admitted that she was *able to leave*. Facts, ¶¶ 13-16. *See also Ali v. Margate Sch. of Beauty, Inc.*, No. 11-60102-CIV, 2011 WL 4625372, at *5 (S.D. Fla. Oct. 3, 2011) (granting summary judgment for defendant on false imprisonment claim because the plaintiff had a reasonable means of escape by opening office door, notwithstanding she was "subjectively afraid of the consequences of her leaving"). For that matter, Plaintiff has never claimed any fear of consequences for leaving her hotel room.

## III. PLAINTIFF CANNOT PROVE PRESENT OR FUTURE DAMAGES AS A MATTER OF LAW.

Plaintiff seeks damages in the form of emotional injuries.[5] Facts, ¶ 20. Despite Complaint allegations of pain and suffering, mental anguish, and emotional distress, Plaintiff testified at deposition that she has never suffered from depression or anxiety, has no fear of police officers, and suffers from no mental illness or mental conditions. Facts, ¶ 21-22. The *only* source of potential emotional injury she identified was a brief period of insomnia after the incident, which she admits has now stopped. Facts, ¶ 21. Accordingly, Plaintiff has not put forth any evidence of present or future damages (emotional or otherwise) and, therefore, should not be permitted to seek such damages at trial.

**WHEREFORE**, Defendant Javier J. Romaguera respectfully requests an order granting summary judgment in his favor and against Plaintiff Chantal Georges as to Counts 1 and 4 of the Amended Complaint [D.E. 24], and as to Plaintiff's claim for present or future damages; and to grant all such other relief as the interests of justice may require or permit.

Dated: February 8, 2019                    Respectfully submitted,

                                           */s/ Roger. S. Kobert*
                                           Roger S. Kobert (Florida Bar No. 765295)
                                           rkobert@wsh-law.com
                                           Matthew H. Mandel (Florida Bar No. 147303)
                                           mmandel@wsh-law.com
                                           Anne R. Flanigan (Florida Bar No. 113889)
                                           aflanigan@wsh-law.com
                                           WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.
                                           2525 Ponce de León Boulevard, Suite 700
                                           Coral Gables, Florida 33134
                                           (305) 854-0800 Telephone
                                           *Counsel for Defendant Sgt. Javier J. Romaguera*

---

[5]      In fact, Plaintiff does not allege physical injuries or other categories of injuries in her Complaint. *See generally* D.E. 24.

13