## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: 18-cv-21381-UU

JANE DOE,

   Plaintiff.

v.

CITY OF MIAMI GARDENS, *et al.*,

   Defendants.

_____/

## <u>ORDER</u>

THIS CAUSE is before the Court upon Defendant Javier J. Romaguera ("Sgt. Romaguera")'s Motion for Partial Summary Judgment (the "Motion") (D.E. 65).

THE COURT has reviewed the Motion and pertinent parts of the record and is otherwise fully advised in the premises.

For the reasons explained below, the Motion is granted as to the sole federal claim, and the Court declines to exercise jurisdiction over the state law claims.

### I.    BACKGROUND

On April 8, 2018, Plaintiff Chantal Georges[1] ("Plaintiff") commenced this action against Sgt. Romaguera and the City of Miami Gardens (the "City"), based on the events of July 12, 2016.

---

[1] Plaintiff is admonished for never seeking leave to proceed pseudonymously. "Generally, parties to a lawsuit must identify themselves in their respective pleadings." *Doe v. Frank*, 951 F.3d 320, 322 (11th Cir. 1992). Federal Rule of Civil Procedure 10(a) requires a plaintiff to "include the names of all the parties" in her complaint. "This rule serves more than administrative convenience. It protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *Frank*, 951 F.3d at 322. A plaintiff seeking to contravene Rule 10(a) by suing under a fictitious name bears the burden of showing she has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings. *Id.* at 323. Here, Plaintiff never moved for permission to proceed under the name "Jane Doe" and never set forth any argument as to why she believes she can meet her burden of overcoming Rule 10(a). In any event, Sgt. Romaguera has publicly filed pleadings—including the Motion—using Plaintiff's real name, and Plaintiff has not objected. As a result, the Court considers Plaintiff to have waived anonymity.

D.E. 1. The City was dismissed from the case on July 5, 2018. D.E. 34. And Plaintiff consented to dismissal of Count III of the operative Amended Complaint (D.E. 24) (the "Complaint"). D.E. 29 at *3; D.E. 35. The remaining counts against Sgt. Romaguera are: (1) a claim under 42 U.S.C. § 1983 premised on an alleged Fourth Amendment violation [Count I]; (2) a claim for assault and battery under Florida law [Count II]; and (3) a claim for false imprisonment under Florida law [Count IV].

In his Motion, Sgt. Romaguera asserts that he is entitled to summary judgment on Count I because the § 1983 claim is barred by qualified immunity and, alternatively, Plaintiff has not stated a Fourth Amendment violation. He also asserts that he is entitled to summary judgment on Count IV because Plaintiff had reasonable means of escape from the hotel in which she was allegedly falsely imprisoned. Sgt. Romaguera does not seek summary judgment on Count II. However, he also seeks a summary judgment ruling as to Plaintiff's present and future damages, based on Plaintiff's deposition testimony disclaiming any mental distress or emotional injury because of Sgt. Romaguera's actions.

The Motion is now ripe for disposition.

## II.    EVIDENTIARY DISPUTES

As a preliminary matter, Sgt. Romaguera correctly notes that "Plaintiff did not file a statement of material facts comporting with Local Rule 56.1." D.E. 94 at 1. Local Rule 56.1 requires a party opposing summary judgment to file an opposing statement of material facts that corresponds with the order and paragraph numbering scheme used in the movant's statement of material facts. S.D. Fla. L.R. 56.1(a). "Additional facts which the party opposing summary judgment contends are material shall be numbered and placed at the end of the opposing party's statement of material facts; the movant shall use that numbering scheme if those additional facts

are addressed in the reply." *Id.* Rule 56.1's "clear procedural directive is intended to reduce confusion and prevent the Court from having to scour the record and perform time-intensive fact searching. The rule thus reflects a clear policy that it is **not** the court's obligation to scour the record for a factual dispute that precludes summary judgment. Rather, it is the nonmovant's obligation to specifically bring the factual dispute to the court's attention by rebutting the movant's factual statements on a paragraph by paragraph basis and with specific citations to the record." *Joseph v. Napolitano*, 839 F. Supp. 2d 1324, 1329 (S.D. Fla. 2012) (citing official comments to L.R. 56.1) (emphasis in original).

Plaintiff shirked Rule 56.1's clear procedural directive, ignoring Sgt. Romaguera's statement of facts and instead asserting 46 of her own allegedly undisputed facts. *See* D.E. 92 at *2–7. 19 of the 46 facts lack any citation to record evidence whatsoever. *See id.* at ¶¶ 3, 5, 20–30, 35–39, 42. As a result, pursuant to Federal Rule of Civil Procedure 56(e) and Local Rule 56.1(b), the Court disregards these facts. The Court does not have "an obligation to parse a summary judgment record to search out facts or evidence not brought to the court's attention." *Atlanta Gas Light Co. v. UGI Utilities, Inc.*, 463 F.3d 1201, 1209 (11th Cir. 2006); *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (explaining that judges "are not like pigs, hunting for truffles buried in briefs...") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991))

Of Plaintiff's remaining facts, 15 facts cite only generally (*i.e.,* without specific page references) to a 40-page Florida Department of Law Enforcement ("FDLE") Report (D.E. 92-1) (the "Report"). *See* D.E. 92 at ¶¶ 1–2, 4, 6–12, 31–34, 43. Nine facts cite to specific pages of the Report, but to no other evidence. *See id.* at ¶¶ 13–16, 18–19, 40, 44–45. Sgt. Romaguera argues that all of these facts should be disregarded because the Report—which consists almost entirely of

FDLE investigator Steven Caceres' summaries of conversations with and sworn statements by non-parties—is inadmissible hearsay within hearsay. *See* D.E. 94 at *2–4. The Court agrees.

Plaintiff argues that the Report is admissible under the public records exception to the hearsay rule. *See* Fed. R. Evid. 803(8). This exception provides that factual findings from a legally authorized investigation are admissible, so long as the opponent does not show that the record indicates a lack of trustworthiness. *See id.* But even if the factual findings of an FDLE investigator could be admissible under Federal Rule of Evidence 803(8), the hearsay statements in this Report are not. *See, e.g.*, *Roxbury-Smellie v. Fla. Dep't of Corrections*, 324 F. App'x 783, 785 (11th Cir. 2009) (interview statements in investigative report remain hearsay; even though factual findings made by an investigator fall within public records exception to hearsay, the interview statements themselves are not factual findings); *accord Jessup v. Miami-Dade Cty.*, 697 F. Supp. 2d 1312, 1322 (S.D. Fla. 2010) ("While 'factual findings' in internal affairs reports are generally admissible under an exception to the hearsay rule, Fed. R. Evid. 803(8), summaries of interviews that are contained in those reports are also double hearsay that cannot be admitted at trial or considered on summary judgment."); *see also Gregory v. Wal-Mart Stores East, LP*, 2013 WL 12180710, at *6 (S.D. Ga. July 23, 2013) (police report admissible to the extent it contains the opinions and conclusions formed during the investigation, but any statement contained in the report that was made by a non-party witness or bystander is inadmissible as hearsay within hearsay).

Examining the Report, it is obvious that the FDLE investigator's "findings" were not in any way based on his contemporaneous personal observations of the underlying events. To be admissible as a public record, the matters observed in the Report must be "'based upon the knowledge or observations of the preparer of the report,' as opposed to a mere collection of statements from a witness." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1278 (11th Cir. 2009)

(quoting *Miller v. Field*, 35 F.3d 1088, 1091 (6th Cir. 1994)). "Notably, even if…police reports do not 'explicitly paraphrase the words of others,' they can be hearsay if 'the only conceivable explanation' for how the information was obtained was by 'listening to the statements of others.'" *Mamani v. Berzain*, 309 F. Supp. 3d 1274, 1297 (S.D. Fla. 2018) (quoting *United States v. Ransfer*, 749 F.3d 914, 925 (11th Cir. 2014)). Thus, to be admissible, the Report must do more than "repeatedly and expressly convey[] what has been reported by third-parties." *Id.* There must be some "indication that the events described in [the Report] are based on the personal observations of the preparer[] of the report[]." *Id.* There is no such indication here. The FDLE investigator made his conclusions based only on second-hand observations and conversations. Of note, the investigation was not even commenced until November 21, 2016—several months after the alleged events occurred in July of 2016. *See* Report at *3.[2]

Nor do the statements in the Report constitute prior consistent statements under Federal Rule of Evidence 801(d)(1)(B). The statements in the Report are not offered to rebut a charge of recent fabrication; rather, they are offered for the truth of the matters asserted—an impermissible purpose, as the Rule "speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told." *Tome v. United States*, 513 U.S. 150, 157–58 (1995); *see also United States v. Bao*, 189 F.3d 860, 864–65 (9th Cir. 1999) (noting that "[m]ere contradictory testimony cannot give rise to an implied charge of fabrication," so a party cannot use a prior statement to resolve an inconsistency and bolster the veracity of his version of events).

In sum, because the Report reflects only hearsay and not Agent Caceres' personal first-hand observations of the events, the Court shall not consider those of Plaintiff's facts supported only by the Report.

---

[2] The Court cites to the CM/ECF page numbers at the top of the Report, D.E. 92-1, rather than the page numbers at the bottom of the document.

### III.    FACTS

Having resolved the foregoing evidentiary disputes, the following are the facts viewed in the light most favorable to Plaintiff, the non-moving party, to the extent Plaintiff's facts are supported by admissible evidence. *See Tinker v. Beasley,* 429 F.3d 1324, 1326 (11th Cir. 2005); *Shotz v. City of Plantation, Fla.,* 344 F.3d 1161, 1164 (11th Cir. 2003); *see also Cottrell v. Caldwell,* 85 F.3d 1480, 1486 (11th Cir. 1996) ("[W]hat is considered to be the 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes.").

### A.    The 911 Call

On Monday, July 11, 2016, at or about 11:00 p.m., a call came into the Miami Gardens Police Department ("MGPD") about a woman running in the roadway near 2035 NW 183rd Street in Miami Gardens. D.E. 65-1 (the "MGPD Event Report"). MGPD dispatch reported this as a potential suicide attempt, noting that the woman "was just released from the behavior health hospital for depression." *Id.* (typographical errors corrected). The woman was in fact Plaintiff, a 23-year old recent Haitian immigrant who spoke Creole. *See id.*

Sgt. Romaguera and other MGPD officers responded to the dispatch, arrived on the scene, and made contact with Germaine Adderley, the individual who made the 911 call. *See id.*; *see also* D.E. 65-2 ("Sanchez Dep."), 12:13–13:10. Ms. Adderley operates a group home where Plaintiff had been placed. *See* MGPD Event Report; Sanchez Dep. 10:3-9. Next, the officers set out to find Plaintiff; Officer Seary found her in the middle of the street. Sanchez Dep. 14:10-17; MGPD Event Report. Sgt. Romaguera and Officer Sanchez subsequently approached Plaintiff. *See* Sanchez Dep. 14:15-21. Officer Clervil, who spoke Creole, was brought to the scene to translate. *Id.* 14:23–15:4.

The officers determined that Plaintiff did not meet the criteria to be involuntarily confined pursuant to the "Baker Act."[3] *See* Sanchez Dep. 16:23–17:14, 20:15–21:12; MGPD Event Report. However, Plaintiff refused to stay at the group home. *See* Sanchez Dep. at 34:14-22. The MGPD officers determined that Plaintiff should be given a courtesy ride to an address in Miramar, an address which Plaintiff had provided to the officers. *See* Sanchez Dep. 22:18–23:16; MGPD Event Report.

### B. **The Transport**

Sgt. Romaguera was the officer to provide the courtesy transport. *See* Sanchez Dep. at 23:17–24:9; MGPD Event Report. It is common practice for victims or non-arrestees to be transported in an uncaged police vehicle. *See* D.E. 65-3 ("Schaefer Dep."), 58:6-24. Plaintiff testified in her deposition that Sgt. Romaguera "offered to drop me off home where I was going. I got in the car. I felt safe with him because he's a police officer and a police officer is there to help and protect. So I got in the car with him, but when he passed my house and he didn't stop, and he took me to [the] Stadium Hotel." D.E. 60 ("Plaintiff Dep."), 60:8-15; *see also id.* 69:24–70:1 ("The police just passed by my house without stopping and took me to the Stadium Hotel…."); *id.* at 70:10–16 (Plaintiff: "[Sgt. Romaguera's] job is to help people, and that's why I got into his car." Q: "The – when you got into his car, he drove you to a place in Miramar; is that correct?" Plaintiff: "No, he passed my house, the house where I was staying in Miramar. He passed the house and took me to the hotel."). There is no evidence that Plaintiff was under arrest. There is also no genuine dispute that Plaintiff voluntarily got in Sgt. Romaguera's police vehicle.

---

[3] *See* Fla. Stat. §§ 394.451 *et seq.*

### C.  **The Hotel Surveillance**

As reflected in the testimony above, Sgt. Romaguera did not drop Plaintiff off at the Miramar address but instead took her to the Stadium Hotel in Miami Gardens. The hotel's surveillance video shows Plaintiff and Sgt. Romaguera walking into the hotel entrance at approximately 1:08 a.m. on July 12, 2016. *See* video conventionally filed as Exhibit F, 0:13–0:23. In the first second that they are visible on the surveillance video, Plaintiff and Sgt. Romaguera were holding hands. *See id.* Sgt. Romaguera then pulled his hand away to point at the hotel entrance. *See id.* Plaintiff and Sgt. Romaguera continued to walk into the hotel together, no longer holding hands. *See id.*

Once in the hotel entrance, Plaintiff and Sgt. Romaguera took several steps toward what appears to be the hotel check-in desk. *See* video conventionally filed as Exhibit G, 0:03–0:08. Plaintiff continued to walk further into the hotel hallway, but Sgt. Romaguera took her wrist; she stopped walking and stood still while Sgt. Romaguera apparently interacted with the check-in clerk. *See id.*, 0:08–0:14. A few seconds later, he dropped Plaintiff's hand and the two of them continued to walk side by side to the elevator. *See id.*, 0:14–0:24; *see also* video conventionally filed as Exhibit I, 0:11–0:21. As they waited for the elevator, Sgt. Romaguera and Plaintiff appear to have discussed the hotel key cards, with Plaintiff nodding her head in apparent understanding. *See* video conventionally filed as Exhibit I, 0:21–0:38. The elevator doors opened, and the two entered the elevator. *Id.*, 0:38–0:44.

The next surveillance video shows Sgt. Romaguera and Plaintiff exiting the elevator and walking down a hallway of rooms, with Plaintiff holding onto Sgt. Romaguera's forearm. *See* video conventionally filed as Exhibit H, 0:01–0:12. Sgt. Romaguera opened a hotel room door with a key card, and the two entered the room. *See id.*, 0:12–0:24. Sgt. Romaguera emerged from

the hotel room approximately 10 minutes later. *See id.*, 10:08. He then walked, alone, back to the elevators, pacing as he waited for elevator doors to open. *See id.*, 10:08–10:40. Once the doors opened, Sgt. Romaguera got on the elevator and departed. *See id.*, 10:40–10:50.

### D.  The Alleged Assault

There is no video evidence of what occurred in the hotel room. Sgt. Romaguera denies any touching. *See* D.E. 94 at *3 n.2. However, viewing the facts in the light most favorable to Plaintiff, based on the admissible evidence before the Court, Sgt. Romaguera grabbed Plaintiff's breasts against her will and asked her to have sex with him. *See* Plaintiff Dep. 81:1–82:11, 84:25–85:22, 86:1-3. Plaintiff pushed his hands away and refused to sleep with him, saying "don't do that" and "no, don't touch me." *See id.* Sgt. Romaguera accepted this rejection and left within 10 minutes of entering the room, giving Plaintiff permission to stay in the hotel room until Wednesday. *See id.* 81:24–82:3, 82:12-19, 83:2-6; *see also* video conventionally filed as Exhibit H.

### E.  Plaintiff's Claims that She Was Trapped in the Hotel

In her deposition, Plaintiff testified that Sgt. Romaguera locked her in the hotel and that she could not leave. *See id.* 83:25–84:1, 86:12-16, 87:3-5. She could not explain how it was possible that she was locked in: "All I know is that I couldn't leave the room." *Id.* 84:2-4. She further explained that, having just come to the United States, she had never been to a hotel before: "I didn't know what a place like that is. So I didn't really understand what was happening." *Id.* 84:5-8. She testified that she tried to leave but didn't know how to open the door. *Id.* 91:23–92:2.

Plaintiff testified that she was able to get out of the hotel room on Wednesday after hotel employees opened the door to the room and told her to leave. *Id.* 94:16–95:12.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether the moving party has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a showing sufficient to establish the existence of an essential element of that party's case and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrell*, 477 U.S. 317 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

If the record presents genuine factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Envntl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981). Summary judgment may be inappropriate even where the parties agree on the basic facts but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts then the court should deny summary judgment. *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he

dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or are not otherwise in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 255.

## III.      ANALYSIS

The § 1983 claim in Count I is the only claim over which the Court has original jurisdiction pursuant to 28 U.S.C. § 1331. The Court has jurisdiction over the state-law assault and battery and false arrest claims through supplemental jurisdiction. *See* 28 U.S.C. § 1367. Pursuant to § 1367(c)(3), the Court may decline supplemental jurisdiction if "the district court has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3). Accordingly, the Court will first consider Plaintiff's § 1983 claim in Count I before turning to Plaintiff's state law claims.

### A.  Sgt. Romaguera is Entitled to Summary Judgment on the § 1983 Claim

Plaintiff's § 1983 claim, as pled, is not a model of clarity. It is titled: "Fourth Amendment – 42 U.S.C. § 1983." Compl. Count I. Plaintiff alleges that, at all times, she "maintained the right to be free from unlawful imprisonment and assault, protected rights under the Fourth and Fourteenth Amendments of the United States Constitution." *Id.* ¶ 51. She further alleges that Sgt. Romaguera "unlawfully detained and deprived [her] of her liberty" and also "intended to cause, and did cause, offensive contact and unconsented touching of [Plaintiff's] body"—all of which

"violated [Plaintiff's] clearly established Fourth Amendment rights." *Id.* ¶¶ 52–53. The Fourth Amendment provides the "right of the people to be secure in their persons…against unreasonable searches and seizures." U.S. CONST., amend. IV. "[A] seizure is a single act, and not a continuous fact." *West v. Davis*, 767 F.3d 1063, 1070 (11th Cir. 2014) (quoting *California v. Hodari D.*, 499 U.S. 621, 625 (1991)). Thus, as the Court understands it, Plaintiff's § 1983 claim is that (1) her alleged unlawful detention, both in the police vehicle (as one act) and in the hotel (as another act), were allegedly unreasonable seizures, and (2) the alleged sexual assault also was an allegedly unreasonable seizure (*see* D.E. 92 at *14 ("Ms. Georges had a reasonable expectation not to be seized, sexually or otherwise…")).[4]

### 1. *Qualified Immunity Framework*

Qualified immunity "offers complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (additional quotations omitted). The purpose of qualified immunity is to give "government

---

[4] The Court is aware of cases categorizing sexual assault by a police officer as a "nonconsensual violation of bodily integrity which is protected by substantive due process" rather than as an unreasonable seizure. *See, e.g.*, *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 796 (8th Cir. 1998); *see also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 445 (5th Cir. 1994) ("We hold, first, that schoolchildren do have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and that physical sexual abuse by a school employee violates that right."); *Parker v. Williams*, 862 F.2d 1471, 1476–77 (11th Cir. 1989) (in case of rape by jailer of detainee, identifying the "due process" "limited liberty interest in freedom from bodily harm"), *overruled on other grounds by Turquitt v. Jefferson Cty., Ala.*, 137 F.3d 1285 (11th Cir. 1998); *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997) (treating sexual assault claim as one arising under the Fourth Amendment "misconstrues the nature of the constitutional claim. Because the harm inflicted did not occur in the course of an attempted arrest or apprehension of one suspected of criminal conduct…the claim was not one of a Fourth Amendment violation, but of the violation of the substantive due process right under the Fourteenth Amendment not to be subjected by anyone acting under color of state law to the wanton infliction of physical harm"). But Count I of the Complaint and Plaintiff's Opposition to the Motion (D.E. 92) specifically reference the Fourth Amendment and the seizure standard—rather than a "due process" right or its standard (*cf. Graham v. Connor*, 490 U.S. 386 (1989) (rejecting a generic "right" to be free from excessive force and requiring a plaintiff to enunciate the specific constitutional standard governing her right)—so the Court deems any potential due process argument to be waived.

officials breathing room to make reasonable but mistaken judgments." *Ashcroft v. al-Kidd*, 131 S.

Ct. 2074, 2085 (2011). Thus, qualified immunity allows government officials to carry out their

discretionary duties without the fear of personal liability or harassing litigation, thereby "protecting

from suit all but the plainly incompetent or one who is knowingly violating federal law."

*Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001).

### a. Sgt. Romaguera's initial burden

In order to receive qualified immunity, the government official "must first prove that he

was acting within the scope of his discretionary authority when the allegedly wrongful acts

occurred." *Courson v. McMillan*, 939 F.2d 1479, 1487 (11th Cir. 1991) (internal citations omitted).

The Eleventh Circuit has recognized that a government official proves that he acted within the

scope of his discretionary authority by showing "objective circumstances which would compel the

conclusion that his actions were undertaken pursuant to the performance of his duties and within

the scope of his authority." *Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir. 1988) (citing *Mitchell*

*v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)); *accord Jordan v. Doe*, 38

F.3d 1559, 1566 (11th Cir. 1994).

For qualified immunity purposes, the "discretionary authority" standard has been

interpreted at a high level of generality. *Woods v. Paradis*, 380 F. Supp. 2d 1316, 1327 (S.D. Fla.

2005) (citing *Griswold v. Alabama Dept. of Industrial Relations,* 903 F.Supp. 1492, 1498

(M.D.Ala.1995)). In determining whether an official was acting in the scope of his discretionary

authority, the Court must "temporarily put[] aside the fact that it may have been committed for an

unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under

constitutionally inappropriate circumstances." *Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1144

(11th Cir. 2017) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir.

2004)). "In other words, 'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, <u>the outer perimeter</u> of an official's discretionary duties.'" *Id.* (emphasis in original) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).

Here, there is no genuine dispute that Sgt. Romaguera was acting within the scope of his discretionary authority when he arrived at the scene of Plaintiff's reported suicide attempt, transported her in his police vehicle, and took her to the hotel. The only reason Sgt. Romaguera ever encountered Plaintiff in the first place was pursuant to the performance of his duties as a police officer responding to a 911 call. And the undisputed facts establish that victims or non-arrestees are commonly transported in uncaged police vehicles.

Plaintiff concedes that Sgt. Romaguera "was working as an active Police Sergeant during the incident." D.E. 92 at *9. She hopes to reframe the argument, however, to create "a question of fact, as to whether he was performing a discretionary function, or committing a sexual assault." *Id.* This argument focuses on the wrong conduct. *Cf. Mikko*, 857 F.3d at 1144. As the Eleventh Circuit has explained:

> One might reasonably believe that violating someone's constitutional rights is never a legitimate job-related function or within the scope of a government official's authority or power. As we explained in *Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1282 (11th Cir. 1998) (quotation marks and citation omitted), however, "the inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology."

*Holloman*, 370 F.3d at 1266. The two-prong discretionary authority test examines an official's actions "at the minimum level of generality necessary to remove the constitutional taint." *Id.* Here, to examine Sgt. Romaguera's actions at the minimum level of generality necessary to remove the constitutional taint is to examine an officer's transporting a victim away from the middle of a

roadway—the scene of a potential suicide attempt—and taking her to a safer place, even if it is not the place she intended to go.

Thus, rather than the question Plaintiff proposes, the inquiry is much broader: whether Sgt. Romaguera's actions were even reasonably related to the outer perimeter of his discretionary duties. *Mikko*, 857 F.3d at 1144. The answer is that they were.

Sgt. Romaguera therefore has met his initial burden, and the burden shifts to Plaintiff to overcome the qualified immunity defense. *See id.*

### b.   Plaintiff's burden to defeat qualified immunity

The Supreme Court has set forth a two-part test for a plaintiff's burden of showing qualified immunity is improper. First, the Court must assess whether the plaintiff has established a constitutional violation. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001)).

If the plaintiff has demonstrated a constitutional violation, the next sequential step is to ask whether the right was clearly established. *Id.* (internal quotation omitted). A constitutional right is "clearly established" if a reasonable officer should have known that his conduct violated the plaintiff's constitutional rights. *Id.* The contours of the right must be sufficiently clear, such that the unlawfulness of the official's conduct is apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

"To show the law is clearly established, a plaintiff cannot rely on 'general conclusory allegations' or 'broad legal truisms.'" *Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993). The Supreme Court recognizes the "longstanding principle that clearly established law should not be defined at a high level of generality…Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging

violation of extremely abstract rights." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal citations, quotations and alterations omitted).

"Instead, the burden is on the plaintiff to show that, when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful." *Post*, 7 F.3d at 1557. "[D]ecisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state (here, the Supreme Court of Florida) can clearly establish the law." *McClish v. Nugent*, 483 F. 3d 1231, 1237 (11th Cir. 2007) (citing *Marsh v. Butler County*, 268 F.3d 1014, 1032 n.10 (11th Cir. 2001) (en banc)). "Both elements must be satisfied for an official to lose qualified immunity." *Grider v. City of Auburn, Ala.,* 618 F.3d 1240, 1254 (11th Cir. 2010).

### 2.   *Plaintiff Has Not Satisfied Her Burden to Defeat Qualified Immunity*

Plaintiff has not satisfied the first prong of the qualified immunity test. Neither the police transport nor the hotel stay constitutes a Fourth Amendment violation. Further, the alleged sexual assault—while deplorable if proven—does not violate the Fourth Amendment.

#### a.   The transport was not a seizure.

A person has been "seized" within the meaning of the Fourth Amendment "only when, by means of physical force or a show of authority, [her] freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980); *see also Terry v. Ohio*, 392 U.S. 1, 16 (1968) ("seizure" occurs not only in traditional arrests, but whenever "a police officer accosts an individual and restrains [her] freedom to walk away"). Further, a "seizure" occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [s]he was not free to leave." *Mendenhall*, 446 U.S. at 554; *United States v. House*, 684 F.3d 1173, 1199 (11th Cir. 2012). A show of authority, without the application of physical

force, to which the subject does not yield is not a seizure. *California v. Hodari D.*, 499 U.S. 621, 626 (1991); *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006). The officer's subjective intention is irrelevant. *Mendenhall*, 446 U.S. at 554 n.6.

It is undisputed that Plaintiff was not under arrest when she got into Sgt. Romaguera's police vehicle. The question, then, is whether a reasonable person in Plaintiff's position would have thought she was free to leave. The answer is yes.

The case of *James v. City of Wilkes-Barre*, 700 F.3d 675 (3d Cir. 2012), is instructive. There, a minor sent a text message to her friend saying she planned to commit suicide by ingesting ibuprofen pills, and the friend called 911. *Id.* at 678. Police officers appeared at the minor's house. *Id.* The minor admitted that she had planned to commit suicide but said that she had changed her mind and hadn't swallowed any pills. *Id.* Nevertheless, an officer insisted that the minor had to go to the hospital for an evaluation. *Id.* The parents disagreed, arguing that they wanted to handle the matter themselves. *Id.* The officer stated that he would charge the parents with assisted manslaughter if anything happened to the child because of their refusal to send her to the hospital. *Id.* The parents relented and agreed to let the child be taken to the hospital. *Id.* However, the officer then insisted that one of the parents would need to come along to accompany the minor. *Id.* The parents again refused. *Id.* The officer persisted, and eventually the minor's mother agreed to be taken to the hospital. *Id.*

The mother sued under § 1983, arguing that she was seized because the officer used a show of authority to compel her to go to the hospital, even though she did not want to go. *Id.* at 678, 680. The district court agreed and held that the officer was not entitled to qualified immunity, but the Third Circuit reversed. *Id.* at 679–82. The Third Circuit concluded that the district court erred in crediting the mother's assertion that she felt "compelled" by police to go to the hospital:

"whether she was in fact 'compelled' is a legal conclusion." *Id.* at 681. A police officer's "insistence alone is insufficient to constitute a seizure under the Fourth Amendment." *Id.* Moreover, just because the mother felt compelled by law, that did not establish that a reasonable person would have felt she had no choice but to comply. *Id.* (citing *Hodari D.*, 499 U.S. at 628; *Brown*, 448 F.3d at 245). The police had not intimidated the mother with a threatening presence, engaged in any physical touching, displayed a weapon, ordered her to the police station for questioning, nor threatened to arrest her if she refused to accompany them. *Id.* at 682. None of the conduct by the police officers implicated a restriction on the mother's freedom of movement. *Id.* As a result, the Fourth Amendment was not violated, and the officer was entitled to qualified immunity. *Id.*

Likewise, here, where the record is undisputed that Plaintiff voluntarily accepted a courtesy transport from Sgt. Romaguera, there was no seizure as a matter of law. While he may have taken her to a destination to which she did not intend to go, there is no evidence that Sgt. Romaguera threatened Plaintiff, engaged in any physical touching (until later, after they arrived at the hotel), displayed his weapon to coerce her to come with him, nor declared her under arrest. There was no show of authority or pressure to which a reasonable person would have felt compelled to yield. Plaintiff simply cannot establish on this record that she was seized when she drove with Sgt. Romaguera to the hotel.

b.  <u>A reasonable person would not have felt restrained in the hotel.</u>

Plaintiff's next alleged "act" of seizure is her time in the hotel. Here, too, the evidence does not demonstrate coercive police pressure amounting to a restriction on a reasonable person's freedom of movement. True, the hotel surveillance video shows Plaintiff and Sgt. Romaguera, at times, holding hands and otherwise in physical contact with one another while walking through

the hotel lobby and down the hallway. But the video does not show Sgt. Romaguera pulling, dragging, or otherwise applying authoritative force to get Plaintiff to go to the hotel room, nor did Plaintiff testify to that effect. *Cf. United States v. Drayton*, 536 U.S. 194, 203–04 (2002) (police did not seize bus passengers where there was nothing confrontational about the encounter; "[t]here was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice"). Indeed, the video shows numerous opportunities where a reasonable person could have ended the encounter by simply turning around and walking away from the hotel.

The fact that Sgt. Romaguera was in uniform and had a gun is not material. "That most law enforcement officers are armed is a fact well known to the public. The presence of a holstered firearm thus is unlikely to contribute to the coerciveness of the encounter absent active brandishing of the weapon." *Id.* at 205. No reasonable juror could find that Plaintiff was compelled by an overwhelming show of authority to enter the hotel room with Sgt. Romaguera simply because he was a police officer in uniform and armed.

Finally, no reasonable juror could find that Plaintiff was required to stay in the hotel room once inside. Even if Sgt. Romaguera failed to give Plaintiff a room key to the hotel room, nothing reasonably stopped Plaintiff from leaving. Plaintiff argues that she "had no place" else "to go," D.E. 92 at *12, but this is similar to the kind of bus encounter addressed by the Supreme Court in *Drayton*. "A bus rider's movements are confined in this sense, but this is the natural result of choosing to take the bus; it says nothing about whether the police conduct is coercive." *Drayton*, 536 U.S. at 201–02. Likewise, if Plaintiff stayed in the hotel room because she needed a place to stay, that was the natural result of her living arrangement; it says nothing about whether Sgt. Romaguera's conduct was coercive.

Plaintiff argues that she was "ordered" to stay in the room, D.E. 92 at *12, but no record evidence supports this. To the contrary, Plaintiff herself testified: "He said, if you are not going to have sex with me, I will give you until Wednesday. Wednesday you need to get out." Plaintiff's Dep. at 82:1-3; *see also id.* at 82:13-15 ("He told me, I'll give you until Wednesday for you to get out – leave the hotel because I didn't want to have sex with him."). This was permission to stay until Wednesday, not an authoritative command to not leave.

And no reasonable juror could find a genuine dispute in Plaintiff's claim that she was somehow locked inside the hotel room. Plaintiff has not explained how it is that she came to be locked in. To the contrary, she has testified that she "didn't know how to open the door because…[Sgt. Romaguera] was the one with the key," and that even if she had a key, she would not have been able to figure out how to open the door from the inside: "because the place to insert the card was on the outside. So even if there had been a key, I would not have been able to open the door to leave." *See* Plaintiff's Dep. at 91:23–92:24. Any reasonable fact-finder with experience in a hotel room knows that while a room key is needed to get into the hotel from the outside, no key is needed to get out from the inside. Plaintiff's subjective, mistaken belief that she could not leave is not an objective seizure. She has not stated a Fourth Amendment violation.

c.   The unwanted groping does not rise to the level of a Fourth Amendment violation.

To reiterate, Plaintiff's § 1983 claim rests only on the unreasonable seizure prong of the Fourth Amendment. As to Sgt. Romaguera's alleged unwanted groping and sexual propositioning, this does not amount to a seizure under the Fourth Amendment. "Even unreasonable, unjustified, or outrageous conduct by an officer is not prohibited by the Fourth Amendment if it does not involve a seizure." *McCoy v. Harrison*, 341 F.3d 600, 605 (7th Cir. 2003) (quoting *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994)) (alterations omitted). "Some such conduct may

20

simply violate state tort law or indeed may be perfectly legal, though unseemly and reprehensible."
*Id.* (quoting *Kernats,* 35 F.3d at 1175).

   The test for a seizure remains the same. An offensive touching is not a seizure if there is no intentional acquisition of physical control over the person resulting in restraint of her movements. *See id.* at 605–06 (no seizure where government animal control agent hit the plaintiff and dug his fingernails into her arm but then let go). For example, in *Keyes v. Washington County*, a county employee/community service monitor groped a criminal defendant/community service worker by grabbing her buttocks and genital area. *See* 2017 WL 3446256, at *3–4 (D. Or. Aug. 10, 2017), *reconsideration denied sub nom. Keyes v. Johnson*, 2017 WL 6328151 (D. Or. Dec. 11, 2017). At summary judgment, the district court held that the groping "had an objective purpose of initiating unwanted sexual contact." *Id.* at *5. However, the physical contact "did not show an objective purpose to restrain [the plaintiff's] freedom of movement beyond the instant of contact." *Id.* As a result, no seizure occurred. *See id.*; *see also Martinez v. Nygaard*, 831 F.2d 822, 826–27 (9th Cir. 1987) (grabbing a person's shoulder and releasing once gaining the person's attention was not a seizure, because the physical contact's objective purpose was to get the plaintiff's attention, even if the physical contact had the effect of momentarily restricting the plaintiff's freedom of movement).

   So too here. Sgt. Romaguera's objective purpose in grabbing Plaintiff's breast and asking her to sleep with him, if proven, was to initiate unwanted sexual contact, not to restrain Plaintiff's freedom of movement. Further, Plaintiff did not yield to Sgt. Romaguera's show of authority with respect to the groping. She expressly told him to stop, and he did—leaving the hotel room moments

later. Certainly, the alleged sexual assault, if true, is unseemly and reprehensible. But while it may rise to the level of a state law tort, it does not violate the Fourth Amendment.[5]

**B.** **The Court Declines to Exercise Supplemental Jurisdiction Over the Remaining State Law Claims**

The Court may *sua sponte* raise a jurisdiction defect at any time. *See Barnett v. Bailey,* 956 F.2d 1036, 1039 (11th Cir. 1992). As discussed *supra*, Plaintiff's § 1983 claim is the only claim over which the Court has original jurisdiction pursuant to 28 U.S.C. § 1331; the Court had jurisdiction over the state-law assault and battery and false imprisonment claims only through supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). However, with the dismissal of the § 1983 claim, there remains no independent federal jurisdiction to support the Court's exercise of supplemental jurisdiction over the state law claims against Sgt. Romaguera.

Under 28 U.S.C. § 1367(c), where the Court has dismissed all claims over which it has original jurisdiction, the Court has discretion to exercise supplemental jurisdiction over non-diverse state law claims. *See Palmer v. Hospital Authority of Randolph County,* 22 F.3d 1559, 1567 (11th Cir. 1994) As the Eleventh Circuit made clear in *Palmer,* if a court has power to exercise supplemental jurisdiction under § 1367(a), then the court should exercise that jurisdiction unless § 1367(b) or (c) applies to limit the exercise. In this case, § 1367(c) applies because the court "has dismissed all claims over which it has original jurisdiction[,]" namely Plaintiff's § 1983 claim. *See* 28 U.S.C. § 1367(c).

---

[5] Again, the conduct arguably may have constituted a substantive due process violation, but Plaintiff did not press that legal ground, and it is not this Court's role to argue it for her. *See supra* n.4; *see also **Error! Main Document Only.**Mason v. George,* 24 F. Supp. 3d 1254, 1261 (M.D. Ga. 2014) (granting summary judgment because "[a]s noted by another district court, 'a court is not obligated to read minds and cannot construct arguments or theories that a party has failed to raise in briefing.'") (quoting *SE Prop. Holdings, LLC v. Stradley,* 2012 WL 1605561, at *2 (S.D.Ala. May 7, 2012)); ***Error! Main Document Only.**Cont'l Motors, Inc. v. Jewell Aircraft, Inc.,* 882 F. Supp. 2d 1296, 1302 n.6 (S.D. Ala. 2012) ("Movants not having fleshed out this argument or lent it any substance, this Court will not undertake to develop it on their behalf.").

Therefore, the Court finds that the remaining state law claims are best resolved by Florida courts. *See Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) (federalism counsels that "[s]tate courts, not federal courts, should be the final arbiters of state law") (citing *Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1553 (11th Cir. 1992)). This is especially true where the Court is dismissing Plaintiff's federal law claim prior to trial. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as matter of comity and to promote justice between the parties, by procuring them a surer-footed reading of applicable law."); *see also Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002) (explaining that "the argument for dismissing state law claims in order to allow state courts to resolve issues of state law is even stronger when the federal law claims have been dismissed prior to trial"); *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) ("[T]his Court has noted that 'if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims.'" (quoting *L.A. Draper & Son v. Wheelabrator–Frye, Inc.*, 735 F.2d 414, 428 (11th Cir.1984) (citing *Gibbs*, 383 U.S. at 726))).

Accordingly, the Court declines supplemental jurisdiction over Counts Two and Four of Plaintiff's Complaint.[6]

## IV.    CONCLUSION

For the reasons stated herein, it is hereby

ORDERED AND ADJUDGED that the Motion, D.E. 65, is GRANTED IN PART AND DENIED IN PART as follows:

(1) Count One of Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

(2) Count Two of Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE.

---

[6] The Court therefore also declines to reach the issue of present or future damages.

(3) Count Four of Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE.

    The Court will enter a separate final judgment.

    DONE AND ORDERED in Chambers at Miami, Florida, this __8th__ day of April, 2019.

_Ursula Ungaro_

URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record via CM/ECF

24